Clyde **WASHINGTON**

v.

**WINN–DIXIE OF LOUISIANA, INC., et al.**

Civ. A. No. 89–5173.

United States District Court,
E.D. Louisiana.

March 29, 1990.

Charles W. Fasterling, Metairie, La., for plaintiff.

Vivian L. Madison and Deborah A. Van Meter, Jones, Walker, Waechter, Poitevent, Carrére & Denégre, New Orleans, La., for defendants.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

This matter came before the Court on March 28, 1990 on defendants' motion for summary judgment. After oral argument by counsel, the Court took the motion under submission. For the following reasons, the Court now GRANTS the motion.

### I.

This is an ERISA case concerning insurance coverage.

Defendant Winn–Dixie of Louisiana, Inc. has established an employee welfare benefit plan under ERISA, 29 U.S.C. §§ 1001–1461. Under the plan, Winn–Dixie has obtained group medical insurance through defendant American Heritage Life Insurance Company, which is also the administrator of the plan. Plaintiff, Clyde Washington, is a participant of the plan.

On May 7, 1989, plaintiff suffered a spinal fracture dislocation that has rendered him quadriplegic. In July 1989, he sought coverage under the plan for "hyperbaric oxygen therapy," as recommended by his physician Dr. Keith VanMeter. Stating that hyperbaric oxygen therapy is "experimental and investigative in the treatment of spinal cord injuries," defendants denied coverage under the plan.

On November 6, 1989, plaintiff filed a petition in a Louisiana state court for declaratory judgment that such therapy was covered by the plan. Pursuant to the ERISA "displacement" doctrine enunciated in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), defendants timely removed the action to this Court.

Defendants now move for summary judgment on the ground that the therapy sought is experimental and investigative only and thus is not "medically necessary," as is required for coverage under the plan. In support, defendants rely on extensive medical literature as well as on the deposition testimony of plaintiff's treating physician. Plaintiff concedes that the therapy sought is still considered experimental and investigative by the medical profession, but argues that the group policy in effect for him does not exclude coverage for experimental and investigative therapy.

Defendants rely on a Winn–Dixie group policy that on its face states it is effective July 1, 1989; plaintiff relies on a Winn–Dixie schedule of insurance that on its face states it is as amended through July 1, 1986. Neither side has submitted affidavits or other testimonial evidence showing that the provisions upon which it relies are the ones in effect at the time plaintiff sought his therapy and made his demand on defendants for coverage of such therapy. Below, the Court parses the material portions of the two documents before the Court and then analyzes their provisions.

### II.

Defendants have submitted a copy of the group policy they suggest was in effect at the time plaintiff sought his therapy. Under the heading "Major Medical Expense Insurance," the policy provides:

> We will pay the benefits of this section if an Insured Person incurs Covered Medical Expenses due to Sickness or Injury. Payments are subject to all terms of the Group Policy that may apply.

*Policy* at 17. The policy then defines "Covered Medical Expenses":

Covered Medical Expenses are only the charges and fees incurred by an Insured Person for those services and supplies listed below. They are subject to the exclusions and other limits which may apply to this section.... They must be Medically Necessary for the care and treatment of an Insured Person due to a Sickness or an Injury.

. . . .

9. Medical supplies from the following list are included. Services that are required to administer these supplies are included too.
   a. ... oxygen ...

*Id.* at 18. The policy also has the following exclusion provisions:

No benefits will be paid under any section of the Group Policy that provides a type of Health Expense Insurance for any expense incurred by an Insured Person:

A. on account of in connection with:
1. an examination not required for care and treatment of a Sickness or Injury, immunization or other preventative measures;

. . . .

B. for care, treatment, services and supplies:
1. that are not Medically Necessary; [or]

. . . .

4. that we [American Heritage Life] determine to be not necessary for diagnosis, care or treatment of the Sickness or Injury Involved; (This applies even if prescribed by a Physician.)

*Id.* at 23–24. In the general provisions, the policy further provides:

**Health Expense Insurance** means and includes all insurance under the Group Policy that pays benefits to defray, at least in part, loss caused by the expense of health care. By health care, we mean here the care and treatment of an Insured Person for Sickness or Injury.

. . . .

**Medically Necessary** refers to services and supplies used to identify or treat Sickness or Injury. As such, the term means that the service or supplies satisfies all of the following conditions:

(a) It is thought to be essential, or among the alternatives that are thought to be essential, in the medical treatment or for the medical diagnosis of a Sickness or Injury.

(b) It is thought by most recognized and learned authorities in the attending Physician's field of practice to be useful in treating the condition for which it has been prescribed and to have the effect claimed for it.

(c) It has been shown to have such desired effect on the basis of scientific data.

. . . .

(e) It use is not experimental, investigative or in the nature of research as defined by the American Medical Association.

. . . .

A service or supply that is not of a medical nature or is not required to maintain life or a function of the body, or from which it is not reasonable to expect a patient to improve any more, will not be deemed Medically Necessary. The mere fact that a Physician or other provider has furnished or approved it does not, of itself, make it so.

*Id.* at 34–36. An undated Winn–Dixie pamphlet entitled "Flexible Benefits Program" repeats verbatim the definition of Medically Necessary; the record does not indicate whether this pamphlet was given or made available to plaintiff.

Plaintiff does not argue with defendants' position that the above provisions do not cover the therapy plaintiff seeks. Instead, he suggests that the policy defendants supplied for the motion was not the policy in effect; in support, he suggests that "he had not been furnished with a copy of that policy until after this suit for declaratory judgment was filed" and argues that the

coverage language in effect for plaintiff is the language set forth in "the certificate [of group insurance] that was issued to him."

Attached to plaintiff's memorandum is a copy of a "Schedule of Insurance," presumably supplied to plaintiff by Winn–Dixie at some time before his injury; the relevant language in this schedule is the following:

> If an Insured Person ... incurs Covered Medical Expenses (as defined herein), a benefit shall be payable to the Insured Person for such expenses so incurred....

....

### Covered Medical Expenses

Subject to the provision hereof entitled "Exclusions", charges made to the Insured Person, with respect to himself ..., for any of the services or supplies in the List of Covered Items below which are reasonably necessary for the care and treatment of the Insured Person's ... injury or disease and which are furnished to the Insured Person ... upon the recommendation and approval of a legally qualified physician, shall be considered "covered medical expenses"....

### List of Covered Items

....

(7) The following services and supplies:

....

(iii) oxygen and the administration thereof;

The schedule does not otherwise *explicitly* indicate whether experimental or investigative treatment is covered by the policy to which the schedule applies.

Suggesting that this schedule does not exclude investigational or experimental treatment, the plaintiff then cites non-ERISA cases under Louisiana law that an insurer may not rely on substantial limitations in a policy if they are not also set forth in the certificate of insurance issued to the insured party.

In reply to plaintiff's memorandum, defendants assert (1) that the schedule of insurance plaintiff supplied was the one in effect in July 1986, when plaintiff first became employed with defendant, and not in May 1989, when he was injured, or in November 1989, when he sought coverage and therapy; (2) that the language relied upon by plaintiff similarly does not extend "covered medical expense" to the therapy plaintiff is seeking; and (3) that the Louisiana insurance statutes and cases are inapplicable because the plan is governed by ERISA.

### III.

The Court need not address defendants' first or third point,[1] for the Court finds their second point correct and dispositive of the entire case: under either set of provisions, the therapy plaintiff seeks is not covered.

To constitute a "covered medical expense" under the language of the schedule of insurance relied upon by plaintiff, two conjunctive conditions must be met: first, the expense must be furnished "upon the recommendation and approval of a legally qualified physician" and second, it must be "reasonably necessary for the care and treatment of the Insured Person's ... injury or disease." The dual aspect of this condition illustrates the medical reality that a doctor may validly recommend a certain treatment even though the treatment may not be considered "reasonably necessary."

While plaintiff's doctor recommends the hyperbaric oxygen treatment (and thus plaintiff satisfies the first part of this two-

---

1. Because the Court finds defendants' first point immaterial, the Court need not determine (a) which side had the burden under *Celotex* to present affirmative evidence of which provisions applied or (b) whether the mere presentation of the two sets of provisions is sufficient to constitute a genuine dispute of fact. Concerning defendants' third argument (made without any specific statutory or case authority), the Court merely notes that the interplay between ERISA and state insurance provisions is not as simple as defendants suggest. *See generally Taylor v. Blue Cross/Blue Shield of New York*, 684 F.Supp. 1352, 1354–59 (E.D.La.1988) (describing and applying the intricacies of ERISA's preemption and insurance savings clauses).

part requirement), it remains undisputed that this treatment is only investigative and experimental, especially where as here the treatment is sought not hours but months after the injury.

Plaintiff's physician may have had success with such experimental treatment in the past, and he and plaintiff may be willing to give plaintiff this experimental treatment in the remote chance it may improve plaintiff's tragic condition notwithstanding the lack of time-tested reliable use of such treatment for injuries similar to plaintiff's. These possibilities do not, however, render the treatment any less experimental or any more recognized by the medical profession.

Until the medical profession, plaintiff's doctor included, recognizes hyperbaric oxygen treatment as being more established, this Court may not conclude that defendants wrongfully denied coverage under their group policy.

### IV.

For these reasons, the Court GRANTS defendants' motion. The Court shall forthwith enter judgment dismissing plaintiff's complaint with prejudice at his costs.